**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE
2026 AUG 17 AM 8: 56

**JANE DOE,**
Plaintiff,

v.

**NICOLE MAZUR; LUBOV LEVIN; IAN GABBIDON;**
**PAT HAHN; PAT HAHN REAL ESTATE;**
**IVAN KARAMIAN; BERKSHIRE HATHAWAY HOMESERVICES OF MASSACHUSETTS, INC.;**
**REYNOLDS AND WERMAN PC; ROBERT [LAST NAME UNKNOWN];**
**GOLDMAN SACHS & CO. LLC; GOLDMAN SACHS PHILANTHROPY FUND; HOLYOKE POLICE DEPARTMENT; CITY OF HOLYOKE; JOHN DOE OFFICERS 1-10; VALLEY HEALTH SYSTEMS, INC.; HOLYOKE HOSPITAL; SPURIS HATIRAS; DR. LEDERMAN [FIRST NAME UNKNOWN]; JANE DOE SOCIAL WORKER; HOLYOKE HOSPITAL RISK MANAGEMENT DEPARTMENT; BRAVEN HEALTH; and BLUE CROSS BLUE SHIELD OF NEW JERSEY,**
Defendants.

Civil Action No.: 26-CV-6758 amended Complaint

**COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1961 et seq.), MAIL FRAUD, WIRE FRAUD, BANK FRAUD, FINANCIAL ELDER ABUSE, FRAUDULENT CONVEYANCE, CIVIL CONSPIRACY, AND RELATED STATE LAW CLAIMS**

**JURY TRIAL DEMANDED**

PRELIMINARY STATEMENT — THE HUMAN COST OF THIS CASE

This case is about more than money. It is about the systematic destruction of a family legacy, the exploitation of a grieving elderly widow, the silencing of a daughter who dared to assert her rights, and the permanent loss of an irreplaceable contribution to world

literature — all orchestrated by a ringleader driven purely by greed.

Roman Levin was not a wealthy man in the conventional sense. He was rich in a far more important currency — culture, scholarship, and human connection. He built a publishing company dedicated to preserving the voices of Russian literature at a time when those voices were suppressed. He corresponded personally with Nobel Laureate Alexander Solzhenitsyn — one of the greatest writers of the twentieth century — and with Nobel Laureate poet Joseph Brodsky — whose words transcended borders and generations. He published Sergei Dovlatov, and he alone preserved rare editions of Dovlatov's work that exist nowhere else on earth. When Roman Levin died on July 25, 2025, he left behind not just a house and a bank account — he left behind an irreplaceable archive of human achievement.

He also left behind two daughters. In the months and years before his death, Roman Levin confided directly to Plaintiff that Nicole Mazur was frequently calling him and verbally upsetting him — taunting him that his library was garbage and should be discarded — while simultaneously demanding money from him on a weekly basis. Roman Levin had a serious heart condition. Nicole Mazur knew this. She called anyway, week after week, to demand money and demean the life's work of a dying man. One — Jane Doe, your Plaintiff — had invested her entire life savings in his home, cared for the property, and been promised by her father that it would one day be hers. The other — Nicole Mazur — watched her father die and immediately began dismantling everything he had built.

Within days of Roman Levin's death, Nicole Mazur concealed it from her sister. Within months, she had manipulated their elderly grieving mother into transferring the family home for one hundred dollars. Within the year, she had sold that home to a straw buyer for one hundred and ninety-six thousand dollars — pocketing every cent — thirteen days after a funeral home that had buried Roman Levin recorded a lien against the property for eight thousand four hundred dollars in unpaid burial expenses that Nicole Mazur had refused to pay. She abandoned Roman Levin's Nobel Laureate correspondence, his rare literary archives, and her own sister's personal belongings inside the home without a single inventory item recorded.

When Jane Doe tried to stop this — when she told police she was a part owner of the home and would file in Land Court — Nicole Mazur's response was to direct their mother to call police and have Jane Doe arrested. Jane Doe personally overheard Nicole Mazur instruct their mother: "Call police to get rid of Jane Doe before she files in Land Court." The police — whose entire department is listed as friends on Nicole Mazur's Facebook page — obliged. They arrested Jane Doe based on a shirt stained with spaghetti sauce,

presented as blood, without conducting a single forensic test. They refused to withdraw the arrest even when both parents called together and asked them to. Jane Doe spent two weeks in a psychiatric hospital where she never signed a single document, was denied access to an attorney, was subjected to sexual harassment, received no psychiatric treatment, and was billed fourteen thousand dollars to her Medicare insurance for services that were never rendered — billed on documents bearing a forged signature. A legal aid attorney called Plaintiff while she was still being unlawfully held at Holyoke Hospital — before she was released. The attorney asked Plaintiff one critical question: had she signed anything? Plaintiff confirmed she had never signed a single document. The attorney then called Holyoke Hospital directly and demanded Plaintiff's immediate release. Despite this demand, the hospital continued to hold Plaintiff for an additional full week before finally releasing her — during which time Dr. Lederman made his third attempt to obtain Plaintiff's signature on the voluntary admission form, which Plaintiff refused for the third time.

Jane Doe's mother — Plaintiff's Mother — is now missing. She is somewhere in a nursing home, location unknown, kept isolated by Nicole Mazur who has confirmed to police that she knows where Plaintiff's Mother is but refuses to tell anyone. Two wellness checks have failed to find her. She cannot call her daughter. She cannot consult a lawyer. She cannot participate in the court proceedings that determine the fate of everything her husband built.

This Court is asked to do what the state courts could not — to reach across jurisdictional lines, to hold accountable a ringleader who directed her criminal enterprise from Queens, New York, and to restore to a daughter the inheritance, the property, and the dignity that were systematically stolen from her. The law of this nation was written for exactly this moment. Plaintiff respectfully asks this Court to apply it.

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Simultaneously with the filing of this Complaint, Plaintiff is filing an Emergency Motion for Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and 18 U.S.C. § 1964(a), seeking to freeze the assets of Defendants Nicole Mazur, Robert [Last Name Unknown], Goldman Sachs & Co. LLC, Goldman Sachs Philanthropy Fund, Ian Gabbidon, and Reynolds and Werman PC pending resolution of this action. The grounds for the Emergency TRO are fully set forth in Plaintiff's accompanying Emergency Motion for Temporary Restraining Order and Preliminary Injunction, which is incorporated herein by reference.

In summary, an immediate TRO is necessary because:

1. Nicole Mazur has already fraudulently obtained $196,000.00 in proceeds from the sale of 158 Pleasant Street and has no independent income — these funds will be permanently dissipated without immediate Court intervention;

2. Roman Levin's irreplaceable literary estate — including original correspondence with Nobel Laureates Alexander Solzhenitsyn and Joseph Brodsky and rare Dovlatov editions — is currently inside 158 Pleasant Street and at immediate risk of destruction or permanent loss;

3. Goldman Sachs Philanthropy Fund assets connected to the fraudulent straw purchase of 158 Pleasant Street must be preserved pending discovery; and

4. Every day without a freeze order is a day closer to permanent and irreversible loss of the assets needed to satisfy any judgment in this action.

Plaintiff respectfully requests that this Court treat the accompanying Emergency TRO Motion as an emergency matter and present it to the duty judge immediately upon filing.

## I. NATURE OF THE ACTION

This is a civil RICO action arising from a coordinated, multi-party criminal enterprise designed to defraud Plaintiff Jane Doe of her equitable ownership interest in real property located at 158 Pleasant Street, Holyoke, Massachusetts, to loot the estate of her deceased father Roman Levin — a man of extraordinary cultural significance whose literary archives, original correspondence with Nobel Laureate authors, and irreplaceable rare editions constitute an incalculable contribution to Russian literature and world cultural heritage — and to exploit and isolate her elderly mother Plaintiff's Mother for financial gain.

The enterprise, operating through a pattern of racketeering activity including mail fraud, wire fraud, bank fraud, and fraudulent conveyance, systematically stripped the estate of Roman Levin of its primary asset — the real property at 158 Pleasant Street, Holyoke, Massachusetts — through two successive fraudulent conveyances, defrauded the estate's funeral creditor, abandoned Roman Levin's irreplaceable literary legacy including original correspondence with Nobel Laureate Alexander Solzhenitsyn and Nobel Laureate poet Joseph Brodsky and rare small press run editions of Sergei Dovlatov's works of which Roman Levin was the sole publisher, isolated Plaintiff's Mother in a nursing home under the complete control of Nicole Mazur, and converted Plaintiff's personal property valued in excess of $50,000.00.

The enterprise was orchestrated by Nicole Mazur — who had no independent income and was entirely financially supported by Robert [Last Name Unknown], a married Goldman Sachs executive — and carried out with the active participation of real estate agents Pat Hahn and Ivan Karamian of Berkshire Hathaway HomeServices, closing attorney Reynolds and Werman PC, straw buyer Ian Gabbidon, and with financial facilitation potentially involving the Goldman Sachs Philanthropy Fund. Plaintiff seeks treble damages, attorneys' fees, injunctive relief, and all other available remedies under RICO and applicable federal and state law.

EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Simultaneously with the filing of this Complaint, Plaintiff is filing an Emergency Motion for Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and 18 U.S.C. § 1964(a), requesting that this Court immediately freeze the following assets pending resolution of this action:

1. All accounts of Defendant Nicole Mazur — including the $196,000.00 in proceeds from the fraudulent sale of 158 Pleasant Street;
2. All accounts of Defendant Robert [Last Name Unknown] connected to this scheme;
3. All Goldman Sachs Philanthropy Fund accounts connected to the Ian Gabbidon purchase;
4. All accounts of Defendant Ian Gabbidon connected to the fraudulent purchase;
5. The Reynolds and Werman PC attorney trust account to the extent closing proceeds remain traceable; and
6. 158 Pleasant Street itself — prohibiting Ian Gabbidon from selling, transferring, encumbering, renovating, or destroying the property or its contents — including Roman Levin's entire irreplaceable literary estate.

The Emergency TRO Motion is filed herewith and incorporated herein by reference. Plaintiff respectfully requests that this Court treat the TRO Motion as an emergency matter and present it to the duty judge immediately upon filing for same-day or next-day consideration. Every day without a freeze order risks permanent dissipation of the fraudulently obtained proceeds by Nicole Mazur, who has no independent income and is facing termination of financial support from Robert.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1964(c) (civil RICO), and 28 U.S.C. § 1332 (diversity of citizenship).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because: (a) Defendant Nicole Mazur resides at 33-09 31st Avenue, Apt 3A, Astoria, New York 11106, within this District; (b) Defendant Robert [Last Name Unknown] is employed at Goldman Sachs, headquartered at 200 West Street, New York, New York, within this District; (c) Defendant Goldman Sachs Philanthropy Fund is headquartered within this District; and (d) a substantial part of the events giving rise to the claims occurred within this District, including: the orchestration of the fraudulent scheme by Nicole Mazur from her Queens, New York residence; wire communications made by Nicole Mazur from Astoria, New York including on the day of Plaintiff's false arrest in August 2024. The arrest occurred at a particularly significant moment — Plaintiff and Roman Levin were in the middle of an active discussion about Plaintiff's dispute over her ownership interest in 158 Pleasant Street and Roman Levin's refusal to add her to the deed despite her 10,000.00 down payment and 79,000.00 in mortgage and tax contributions. It was during this very conversation that Plaintiff's Mother — acting on Nicole Mazur's explicit direction — called Holyoke Police. Nicole Mazur had previously been overheard by Plaintiff instructing Plaintiff's Mother: "Call police to get rid of Jane Doe before she files in Land Court." The timing of the call — made in the middle of an active deed ownership discussion — proves that Nicole Mazur was monitoring the situation in real time and orchestrated the arrest specifically to interrupt and permanently prevent the deed transfer discussion from concluding in Plaintiff's favor; wire communications made by Robert from Goldman Sachs headquarters at 200 West Street, New York; the financial support payments made by Robert to Nicole Mazur from New York; and the potential misuse of Goldman Sachs Philanthropy Fund resources from New York headquarters.

## III. PARTIES

### A. Plaintiff

4. Plaintiff Jane Doe is an individual residing in New Jersey. Plaintiff is the daughter of the late Roman Levin and Plaintiff's Mother. Plaintiff invested $10,000.00 — her entire life savings — as a down payment toward the purchase of 158 Pleasant Street, Holyoke, Massachusetts, made additional contributions of $79,000.00 toward mortgage and tax payments, financed a vehicle, and stored personal property valued in excess of $50,000.00 at the premises. Roman Levin specifically expressed his wish that Plaintiff become the sole owner of 158 Pleasant Street and that Plaintiff administer his personal library and literary correspondence.

Plaintiff also holds the distinction of being designated by Roman Levin as the custodian of his irreplaceable literary legacy.

**B. Defendants**

5. Defendant NICOLE MAZUR is an individual residing at 33-09 31st Avenue, Apt 3A, Astoria, New York 11106. Nicole Mazur is the daughter of Roman Levin and Plaintiff's Mother and the sister of Plaintiff. Nicole Mazur has no independent income and is entirely financially supported by Defendant Robert [Last Name Unknown]. Nicole Mazur was the primary orchestrator of the fraudulent enterprise described herein.

6. Defendant LUBOV LEVIN is an individual currently residing in a nursing home at an unknown location — believed to be in either Massachusetts or New York — the location of which has been confirmed to Holyoke Police by Nicole Mazur but deliberately withheld from Plaintiff, all courts, and all authorities. Upon information and belief Nicole Mazur may have transferred Lubov Levin to a nursing home in or near Queens, New York where Nicole Mazur resides, in order to maintain complete physical control over Lubov Levin and evade Massachusetts court jurisdiction. Adult Protective Services in both Massachusetts and New York have been notified and are investigating Lubov Levin's whereabouts. Lubov Levin is the surviving spouse of Roman Levin and the mother of Plaintiff and Nicole Mazur. Lubov Levin is a knowing but manipulated participant in the fraudulent enterprise. Critically, Lubov Levin always acknowledged Plaintiff Jane Doe's equitable ownership interest in 158 Pleasant Street — she was fully aware of Plaintiff's financial contributions and Roman Levin's expressed wish for Plaintiff's sole ownership. Despite this knowledge and acknowledgment, Lubov Levin was repeatedly called by and directed by Nicole Mazur — the ringleader of the enterprise — and was pressured and manipulated by Nicole Mazur into acting against her own knowledge of Plaintiff's rights. During 2024, under Nicole Mazur's direction, Lubov Levin repeatedly contacted Holyoke Police to file false complaints against Plaintiff in furtherance of the scheme to remove Plaintiff from the property. Roman Levin himself warned Lubov Levin that filing false police reports is a felony under Massachusetts law. Despite this warning, Lubov Levin continued — demonstrating that she acted knowingly, albeit under Nicole Mazur's undue influence and direction. Lubov Levin thereafter transferred 158 Pleasant Street to Nicole Mazur for $100.00 in October 2025 — contrary to her own acknowledgment of Plaintiff's equitable ownership interest — under Nicole Mazur's direction and pressure.

7. Defendant IAN GABBIDON is an individual whose current address is unknown to Plaintiff but who is believed to be in possession of 158 Pleasant Street, Holyoke, Massachusetts, having purchased it through the fraudulent straw sale on April 1, 2026. Ian Gabbidon participated knowingly in the fraudulent scheme as a straw buyer.

8. Defendant PAT HAHN is a licensed real estate agent and principal of Pat Hahn Real Estate, located at 12 Herbert P. Almgren Drive, Agawam, Massachusetts 01001. Pat Hahn participated in and facilitated the fraudulent April 1, 2026 sale of 158 Pleasant Street.

9. Defendant PAT HAHN REAL ESTATE is a real estate brokerage located at 12 Herbert P. Almgren Drive, Agawam, Massachusetts 01001, and is vicariously liable for the conduct of Pat Hahn.

10. Defendant IVAN KARAMIAN is a licensed real estate agent located at 850 Springfield Avenue, Suite 3, Springfield, Massachusetts 01030. Ivan Karamian acted as seller's agent for Nicole Mazur in the fraudulent April 1, 2026 sale of 158 Pleasant Street and participated in and facilitated the fraudulent scheme.

11. Defendant BERKSHIRE HATHAWAY HOMESERVICES OF MASSACHUSETTS, INC. is a real estate brokerage corporation operating in Massachusetts and is the franchisor and/or employer of Pat Hahn and Ivan Karamian. Berkshire Hathaway HomeServices is vicariously liable for the conduct of its agents and is directly liable for its failure to supervise them and prevent their participation in the fraudulent scheme.

12. Defendant REYNOLDS AND WERMAN PC is a law firm that served as closing attorney for the fraudulent April 1, 2026 sale of 158 Pleasant Street, Holyoke, Massachusetts to Ian Gabbidon. Reynolds and Werman PC had actual knowledge of the outstanding liens against the property, including the Writ of Attachment recorded March 19, 2026 and the municipal tax lien, and facilitated the fraudulent closing without satisfying or disclosing these encumbrances.

13. Defendant ROBERT [LAST NAME UNKNOWN] is a married Goldman Sachs executive whose full identity — including last name, employee ID, and contact information — is currently unknown to Plaintiff but is obtainable through subpoena of Goldman Sachs & Co. LLC employment records. Plaintiff will amend this complaint to identify Robert by full name upon completion of discovery.

Goldman Sachs & Co. LLC is hereby on notice that Plaintiff will seek all employment records, communications, and financial transactions relating to Robert in discovery. Robert pays all of Nicole Mazur's living expenses and was in the process of terminating that financial support. Robert is believed to have orchestrated the straw buying scheme using Ian Gabbidon as a front to acquire 158 Pleasant Street while concealing his own involvement, potentially using funds from the Goldman Sachs Philanthropy Fund.

Plaintiff's Mother — Plaintiff's mother and a direct witness to the events described herein — personally informed Plaintiff Jane Doe of the following facts, which Plaintiff will establish through Plaintiff's Mother's testimony at trial:

(a) ROBERT'S ANONYMOUS GIFTS TO LUBOV LEVIN: Robert [Last Name Unknown] — Defendant Goldman Sachs executive and financial supporter of Nicole Mazur — sent anonymous flowers, candy, and other gifts directly to Plaintiff's Mother at 158 Pleasant Street, Holyoke, Massachusetts. Robert deliberately concealed his identity as the sender of these gifts — never identifying himself to Plaintiff's Mother. Plaintiff's Mother received multiple gifts from Robert but was never told who sent them — only learning their origin through Nicole Mazur's subsequent telephone calls. Robert's deliberate anonymity demonstrates his consciousness of guilt and his awareness that his conduct was improper.

(b) NICOLE MAZUR'S COORDINATION OF ROBERT'S GIFTS: After each gift delivery to Plaintiff's Mother, Nicole Mazur would call Plaintiff's Mother to discuss the flowers, candy and other gifts sent by Robert. Nicole Mazur served as Robert's intermediary — managing his anonymous relationship with Plaintiff's Mother on his behalf. This coordinated effort by Nicole Mazur and Robert to send anonymous gifts to an elderly grieving widow — combined with Nicole Mazur's follow-up calls — constitutes a deliberate scheme to gain Plaintiff's Mother's trust and compliance in advance of the fraudulent $100.00 deed transfer.

(c) NICOLE MAZUR'S DIRECT CONTROL OVER GOLDMAN SACHS PHILANTHROPY FUND: Plaintiff's Mother personally informed Plaintiff that Nicole Mazur regularly visited the New York Public Library to select recipients for Goldman Sachs Philanthropy Fund grants — demonstrating that Nicole Mazur exercised direct and substantial influence over the disbursement decisions of the Goldman Sachs Philanthropy Fund. Nicole Mazur — a person with no independent income, no financial credentials, and no legitimate connection to Goldman Sachs other than her relationship with Robert — was directing the grant decisions of a major institutional donor-advised fund from a public library. This testimony from Plaintiff's Mother directly establishes Nicole Mazur's control over Goldman Sachs Philanthropy Fund resources and converts the allegation of

fund misuse from speculative to supported by direct witness testimony. It further establishes that Robert provided Nicole Mazur with access to and influence over Goldman Sachs Philanthropy Fund — which constitutes a serious breach of Goldman Sachs's fiduciary duties to the fund's donors and a potential violation of IRS regulations governing donor-advised funds.

14. Defendant GOLDMAN SACHS & CO. LLC is a global investment banking and financial services company headquartered at 200 West Street, New York, New York 10282. Goldman Sachs & Co. LLC is the employer of Defendant Robert [Last Name Unknown] and is vicariously liable for his conduct in furtherance of the fraudulent scheme described herein. Goldman Sachs & Co. LLC is also the sponsor and administrator of the Goldman Sachs Philanthropy Fund and bears institutional responsibility for the misuse of that fund's resources described herein.

Defendant GOLDMAN SACHS PHILANTHROPY FUND is a donor-advised fund sponsored by Goldman Sachs and headquartered in New York, New York. The Goldman Sachs Philanthropy Fund is alleged upon information and belief — subject to confirmation through discovery and subpoena of Goldman Sachs Philanthropy Fund records — to have been used by Robert to finance the fraudulent purchase of 158 Pleasant Street through Ian Gabbidon, constituting misuse of charitable funds in violation of federal law. The Goldman Sachs Philanthropy Fund's records, grant approvals, and disbursements relevant to this matter are subject to subpoena and will be obtained through discovery.

## IV. FACTUAL BACKGROUND

### A. Roman Levin — A Man of Extraordinary Cultural Significance

Roman Levin was the founder of a New England publishing company dedicated to publishing Russian authors. He corresponded extensively with Nobel Laureate Alexander Solzhenitsyn and Nobel Laureate poet Joseph Brodsky. He published the celebrated Russian writer Sergei Dovlatov and possessed rare small press run copies of Dovlatov's works — editions of incalculable monetary and cultural value of which Roman Levin was the sole publisher and the only existing holder of extra printed copies, unavailable anywhere else in the world. Roman Levin specifically expressed his wish that Plaintiff Jane Doe administer his personal library and literary correspondence, that his entire library be fully inventoried, and that his valuable papers be donated to a Norwegian library. He further expressed his wish that 158 Pleasant Street be converted into a library and bed and breakfast to permanently house his irreplaceable literary collection.

**B. Plaintiff's Equitable Ownership Interest**

Plaintiff Jane Doe contributed $10,000.00 — her entire life savings — as a down payment toward the purchase of 158 Pleasant Street, Holyoke, Massachusetts, and made additional contributions of $79,000.00 toward mortgage and tax payments. Plaintiff financed a vehicle and stored personal property valued in excess of $50,000.00 at the premises while residing there. Roman Levin specifically expressed his wish that Plaintiff become the sole owner of 158 Pleasant Street. Despite these substantial contributions, Roman and Plaintiff's Mother refused to add Plaintiff to the deed. Roman Levin prevented Plaintiff from retrieving her personal property. Plaintiff personally overheard Nicole Mazur telling Plaintiff's Mother to call the police and file false reports against Plaintiff — explicitly stating the purpose was to "call police to get rid of Jane Doe before she files in Land Court." This direct eyewitness evidence is among the most powerful in this case because it establishes beyond any doubt that: (1) Nicole Mazur was the ringleader who personally directed Plaintiff's Mother to file false police reports; (2) Nicole Mazur explicitly acknowledged Plaintiff's legitimate ownership claim — her own words confirm she knew Plaintiff had rights to the property; (3) the false police reports were deliberately and premeditatedly fabricated — not made in good faith — for the specific purpose of removing Plaintiff from the property before she could assert her equitable ownership rights through Land Court proceedings; (4) Nicole Mazur and Plaintiff's Mother acted in conscious and coordinated conspiracy against Plaintiff; and (5) every subsequent act — the false arrest, the involuntary psychiatric hold, the fraudulent conveyances, and the straw sale — flowed directly from this explicitly stated criminal plan. Plaintiff's eyewitness testimony of Nicole Mazur's statement — "call police to get rid of Jane Doe before she files in Land Court" — will be presented at trial as direct evidence of the RICO conspiracy and the premeditated nature of all subsequent acts against Plaintiff. Nicole Mazur coordinated false police reports against Plaintiff in August 2024 to remove her from the property before she could assert her Land Court ownership claim — resulting in Plaintiff's false arrest and an unlawful two-week involuntary psychiatric hold at Holyoke Hospital, where staff falsified Plaintiff's signature and billed her insurance company $14,000.00 for no services rendered.

**C. Roman Levin's Death and the Fraudulent Scheme**

Roman Levin died intestate on July 25, 2025 at Holyoke Hospital Emergency Room, Holyoke, Massachusetts — notably the same hospital that had unlawfully held Plaintiff for two weeks in August 2024 — approximately eleven months before Roman Levin's death — forging her medical records and submitting $14,000.00 in fraudulent Medicare billing. Roman Levin died at the same hospital that had already perpetrated serious crimes against his daughter. 158 Pleasant Street was held by Roman Levin and Plaintiff's Mother as Joint Tenants with Right of Survivorship (Book 15572, Page 534, Hampden

County Registry of Deeds, recorded December 15, 2005). Upon Roman Levin's death, Plaintiff's Mother became the 100% owner of 158 Pleasant Street by operation of the right of survivorship. Rather than honor Roman Levin's expressed wishes or recognize Plaintiff's equitable ownership interest, Defendants immediately commenced a coordinated scheme to loot the estate.

**D. The Fraudulent Enterprise — Timeline of Racketeering Acts**

The following acts constitute the pattern of racketeering activity carried out by the enterprise:

Act 1 — Concealment of Roman Levin's Death (July 2025): Nicole Mazur concealed Roman Levin's death from Plaintiff — calculated to allow the enterprise to act upon estate assets before Plaintiff could intervene. Plaintiff only learned of Roman Levin's death by independently contacting the city clerk's office.

Act 2 — Failure to Pay Funeral Expenses and Defrauding Barry J. Farrell Funeral Home (July 2025 — January 2026): Neither Plaintiff's Mother nor Nicole Mazur paid funeral expenses of $8,400.00 to Barry J. Farrell Funeral Home, Inc. The funeral home filed suit against both Plaintiff's Mother and Nicole Mazur in Holyoke District Court (Docket No. 2617CV000020) on January 23, 2026. Judge Freeman approved a Writ of Attachment on March 11, 2026. The Writ was witnessed by Hon. Danielle L. Williams on March 17, 2026 and recorded at the Hampden County Registry of Deeds on March 19, 2026 at 3:48 PM, Book 26258, Page 350, Document No. 11761.

Act 3 — First Fraudulent Conveyance — Mail and Wire Fraud (October 24, 2025): Plaintiff's Mother fraudulently transferred 158 Pleasant Street to Nicole Mazur for $100.00 (Book 26083, Page 5, Hampden County Registry of Deeds) — with full knowledge of Plaintiff's financial contributions and Roman Levin's expressed wishes — for the specific purpose of defeating Plaintiff's equitable ownership interest. This transfer was made using the mails and wires in furtherance of the fraudulent scheme, constituting mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343.

The full extent of the wire fraud predicate acts will be established at discovery and will include but not be limited to the following communications, all of which constitute wire fraud under 18 U.S.C. § 1343 in furtherance of the RICO enterprise:

(i) Nicole Mazur regularly made telephone calls from her residence at 33-09 31st

Avenue, Apt 3A, Astoria, New York 11106 to Plaintiff's Mother at 158 Pleasant Street, Holyoke, Massachusetts, directing Plaintiff's Mother's actions in furtherance of the fraudulent scheme. Nicole Mazur made such calls on the day of Plaintiff's false arrest in August 2024. The arrest occurred at a particularly significant moment — Plaintiff and Roman Levin were in the middle of an active discussion about Plaintiff's dispute over her ownership interest in 158 Pleasant Street and Roman Levin's refusal to add her to the deed despite her 0,000.00 down payment and 9,000.00 in mortgage and tax contributions. It was during this very conversation that Plaintiff's Mother — acting on Nicole Mazur's explicit direction — called Holyoke Police. Nicole Mazur had previously been overheard by Plaintiff instructing Plaintiff's Mother: "Call police to get rid of Jane Doe before she files in Land Court." The timing of the call — made in the middle of an active deed ownership discussion — proves that Nicole Mazur was monitoring the situation in real time and orchestrated the arrest specifically to interrupt and permanently prevent the deed transfer discussion from concluding in Plaintiff's favor — the exact date of which is obtainable through subpoena of Holyoke Police Department records and will be confirmed and specified upon completion of discovery — proving she was actively directing and coordinating the scheme in real time from New York on the very day Plaintiff was arrested. These phone records are subject to subpoena and will constitute direct wire fraud evidence originating in the Southern District of New York. Plaintiff expressly reserves the right to amend this complaint to add specific dates for each wire fraud predicate act upon completion of discovery.

(ii) Robert [Last Name Unknown], a Goldman Sachs executive, regularly made telephone calls and electronic communications from Goldman Sachs headquarters at 200 West Street, New York, New York 10282, to Nicole Mazur in furtherance of the fraudulent scheme, including communications relating to the orchestration of the straw buying scheme involving Ian Gabbidon. Robert also sent candy and flowers to Nicole Mazur — documented through credit card and delivery records subject to discovery — establishing the ongoing personal and financial relationship between Robert and Nicole Mazur that motivated the scheme. These communications constitute wire fraud originating in the Southern District of New York and further establish venue in this District.

(iii) Holyoke Hospital submitted fraudulent electronic Medicare billing claims to Plaintiff's Braven Health Medicare PPO Advantage Plan and Blue Cross Blue Shield of New Jersey for 14,000.00 for no legitimate medical services rendered, based entirely on forged documents. Plaintiff reported this fraudulent billing to Braven Health and advised that it constituted fraud. Braven Health refused to

investigate and processed the fraudulent claim anyway — making Braven Health a knowing participant in the Medicare fraud rather than merely a victim. All electronic billing submissions and Braven Health's communications refusing to investigate constitute additional wire fraud predicate acts subject to discovery and subpoena.

(iv) All undisclosed personal property of Plaintiff and Roman Levin's estate — including the antique collection, Nobel Laureate correspondence, rare Dovlatov editions, jewelry, artwork, china, sterling silver flatware, personal collectibles, Fidelity Investment accounts, bank accounts, insurance policies, and safety deposit boxes — will be fully valued through expert appraisal and forensic accounting at discovery. The full value of these assets is currently inaccessible to Plaintiff as they are in the possession of Ian Gabbidon or have been dissipated by Nicole Mazur, and is believed to substantially exceed the known compensatory damages already alleged herein. Plaintiff expressly reserves the right to amend the demand amount upon completion of discovery and expert appraisal.

Act 4 — Isolation of Plaintiff's Mother (2025-2026): Nicole Mazur placed Plaintiff's Mother in a nursing home and has refused to disclose her location to Plaintiff or the courts, keeping Plaintiff's Mother isolated and under her complete control, preventing Plaintiff from contacting her mother and preventing Plaintiff's Mother from seeking independent legal counsel.

Act 6 — Engagement of Real Estate Agents in Furtherance of Fraud (Early 2026): Nicole Mazur engaged Ivan Karamian of Berkshire Hathaway HomeServices as seller's agent and Ian Gabbidon engaged Pat Hahn of Berkshire Hathaway HomeServices as buyer's agent, to facilitate the fraudulent sale of 158 Pleasant Street. Both agents knew or should have known of the outstanding liens, the fraudulent nature of Nicole Mazur's title, and Plaintiff's equitable ownership interest.

Act 7 — Fraudulent Closing by Reynolds and Werman PC — Mail and Wire Fraud (March-April 2026): Reynolds and Werman PC, as closing attorney, requested a Municipal Lien Certificate from the City of Holyoke on March 13, 2026 — nineteen (19) days before closing — confirming actual knowledge of the outstanding municipal tax lien of $1,249.27. Despite this knowledge, and despite the Writ of Attachment recorded March 19, 2026, Reynolds and Werman PC facilitated the closing on April 1, 2026 without satisfying either lien, without conventional financing, without title insurance, and without disclosing Plaintiff's

equitable ownership interest — constituting mail fraud and wire fraud in furtherance of the enterprise.

Act 8 — Second Fraudulent Conveyance — Straw Sale to Ian Gabbidon (April 1, 2026): Nicole Mazur sold 158 Pleasant Street to Ian Gabbidon for $196,000.00 (Book 26275, Page 251, recorded April 1, 2026) — just thirteen (13) days after the Writ of Attachment was recorded — without conventional financing, without title insurance, and at a price $71,900.00 below the certified taxable value of $267,900.00. All of Roman Levin's irreplaceable literary estate and all of Plaintiff's personal property were abandoned inside the home and transferred to Ian Gabbidon without authorization. Nicole Mazur retained the entire $196,000.00 in proceeds.

Act 9 — Abandonment of Roman Levin's Irreplaceable Literary Legacy (April 2026): The enterprise abandoned Roman Levin's entire literary estate — including original correspondence with Nobel Laureate Alexander Solzhenitsyn and Nobel Laureate poet Joseph Brodsky, rare small press run Dovlatov editions of which Roman Levin was the sole publisher, manuscripts, publishing archives, and antique collection — inside 158 Pleasant Street, transferring it without authorization to Ian Gabbidon. The permanent destruction of these irreplaceable materials would constitute an incalculable and irreversible loss to Russian literature and world cultural heritage.

Act 10 — Ongoing Concealment and Obstruction (2026-Present): Nicole Mazur continues to conceal Plaintiff's Mother's nursing home location, refuses to account for the $196,000.00 in fraudulently obtained proceeds, and has failed to satisfy the Barry J. Farrell Funeral Home judgment or the City of Holyoke municipal tax lien — all while the enterprise's ill-gotten gains remain in the possession of its members.

## V. RICO ALLEGATIONS — 18 U.S.C. § 1962

### A. The RICO Enterprise

All Defendants constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) (the 'Enterprise'). The Enterprise is an ongoing organization whose members function as a continuing unit for the common purpose of: (1) defrauding Plaintiff of her equitable ownership interest in 158 Pleasant Street; (2) looting the Estate of Roman Levin; (3) exploiting and isolating Plaintiff's Mother; and (4) concealing the proceeds of their fraudulent scheme. The Enterprise has operated continuously from at least July 2025 through the present.

**B. Pattern of Racketeering Activity — 18 U.S.C. § 1961(1)**

Each Defendant has participated in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of multiple related predicate acts occurring over a substantial period of time and posing a threat of continued criminal activity, including:

1. Mail Fraud — 18 U.S.C. § 1341: Defendants used the United States mails to execute the fraudulent scheme, including the mailing of fraudulent deed documents, court filings, and communications in furtherance of the enterprise.
2. Wire Fraud — 18 U.S.C. § 1343: Defendants used interstate wire communications — including electronic transfers, emails, telephone communications, and electronic filings — to execute and conceal the fraudulent scheme.
3. Bank Fraud — 18 U.S.C. § 1344: Defendants executed a scheme to defraud financial institutions through the fraudulent straw sale of 158 Pleasant Street, potentially using Goldman Sachs Philanthropy Fund resources for non-charitable personal benefit.
4. Financial Elder Abuse — 18 U.S.C. § 1028A: Defendants exploited Plaintiff's Mother, an elderly and vulnerable person, to obtain and transfer her primary asset for fraudulent purposes.
5. Obstruction of Justice — 18 U.S.C. § 1503: Defendants have actively concealed evidence, withheld Plaintiff's Mother's location from the courts, and taken steps to obstruct pending judicial proceedings.

**C. Count One — Violation of 18 U.S.C. § 1962(c)**

Each Defendant, being a person employed by or associated with the Enterprise, conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Each Defendant committed multiple predicate acts in furtherance of the Enterprise as set forth herein.

**D. Count Two — Violation of 18 U.S.C. § 1962(d) — RICO Conspiracy**

Each Defendant conspired with the other Defendants to violate 18 U.S.C. § 1962(c). Each Defendant knowingly agreed to facilitate the scheme and was aware that the Enterprise's activities constituted a pattern of racketeering activity. Each Defendant took overt acts in furtherance of the conspiracy as set forth herein.

## VI. ADDITIONAL FEDERAL AND STATE LAW CLAIMS

### Count Three — Mail Fraud — 18 U.S.C. § 1341

Defendants knowingly devised and executed a scheme to defraud Plaintiff and the Estate of Roman Levin using the United States mails, causing Plaintiff damages in an amount to be determined at trial.

### Count Four — Wire Fraud — 18 U.S.C. § 1343

Defendants knowingly devised and executed a scheme to defraud Plaintiff and the Estate of Roman Levin using interstate wire communications, causing Plaintiff damages in an amount to be determined at trial.

### Count Five — Bank Fraud — 18 U.S.C. § 1344

Defendants executed a scheme to defraud financial institutions including through the potential misuse of Goldman Sachs Philanthropy Fund resources for personal benefit in connection with the fraudulent purchase of 158 Pleasant Street.

### Count Six — Fraudulent Conveyance — M.G.L. c. 109A

The October 24, 2025 transfer of 158 Pleasant Street from Plaintiff's Mother to Nicole Mazur for $100.00 and the April 1, 2026 sale to Ian Gabbidon for $196,000.00 constitute fraudulent transfers under Massachusetts law, made with intent to defraud Plaintiff and estate creditors.

### Count Seven — Civil Conspiracy

All Defendants conspired to defraud Plaintiff of her equitable ownership interest in 158 Pleasant Street, to loot the Estate of Roman Levin, and to exploit Plaintiff's Mother, causing Plaintiff damages in an amount to be determined at trial.

### Count Eight — Conversion

Defendants converted Plaintiff's personal property — including her financed vehicle, jewelry, furniture, artwork, china, sterling silver flatware, and personal collectibles valued in excess of $50,000.00 — and Roman Levin's literary estate including Nobel Laureate correspondence and rare Dovlatov editions, causing damages in an amount to be determined at trial.

**Count Nine — Professional Negligence and Breach of Fiduciary Duty**

Defendants Pat Hahn, Ivan Karamian, Berkshire Hathaway HomeServices, and Reynolds and Werman PC breached their professional duties and fiduciary obligations by facilitating a fraudulent real estate transaction with knowledge of outstanding liens, defective title, and Plaintiff's equitable ownership interest.

**Count Ten — Elder Financial Exploitation**

**Count Twelve — Civil Rights Violations — 42 U.S.C. § 1983 — Holyoke Police Department, City of Holyoke, and John Doe Officers 1-10: Defendants Holyoke Police Department, City of Holyoke, and John Doe Officers 1-10, acting under color of state law, deprived Plaintiff of her constitutional rights including: (a) Fourth Amendment right to be free from unreasonable seizure — through false arrest based on fabricated assault report; (b) Fourteenth Amendment right to due process — through false imprisonment during two-week involuntary psychiatric hold; (c) Equal Protection — through biased and preferential treatment of Nicole Mazur arising from undisclosed Facebook friendship between Nicole Mazur and the entire Holyoke Police Department. The City of Holyoke is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978) for maintaining policies, practices, and customs that permitted and enabled these constitutional violations.**

**Count Thirteen — Abuse of Process and False Arrest: Defendants Holyoke Police Department, City of Holyoke, and John Doe Officers 1-10 abused the legal process by: (a) arresting Plaintiff based on a fabricated assault report; (b) accepting false police reports from parties with whom officers maintained undisclosed Facebook friendships; (c) failing to compel Nicole Mazur to disclose Plaintiff's Mother's location despite two wellness check requests and Nicole Mazur's confirmed knowledge of that location; and (d) taking no action to protect Plaintiff's Mother despite confirmation that she is isolated in an unknown nursing home under Nicole Mazur's control.**

**Count Fourteen — False Imprisonment and Civil Rights Violations — Holyoke Hospital — 42 U.S.C. § 1983; M.G.L. c. 265, § 26: Defendants Holyoke Hospital, Spuris Hatiras, Dr. Lederman, Jane Doe Social Worker, and Holyoke Hospital Risk Management Department falsely imprisoned Plaintiff for two weeks without lawful authority, without valid consent, and without any legitimate medical basis — in violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. Plaintiff never signed any consent or voluntary admission documents. Hospital staff forged Plaintiff's signature on all documents including the voluntary admission form. Plaintiff formally withdrew her signature**

**upon discovering the forgery. The entire two-week hold constitutes false imprisonment entitling Plaintiff to maximum damages allowed under law.**

**Count Fifteen — Federal Healthcare Fraud and Medicare Fraud — 18 U.S.C. § 1347; 18 U.S.C. § 1035: Defendants Holyoke Hospital, Spuris Hatiras, and Dr. Lederman submitted fraudulent claims to Plaintiff's Medicare PPO Advantage Plan through Braven Health and Blue Cross Blue Shield of New Jersey for 4,000.00 — based entirely on forged documents, for no legitimate medical services rendered, during an unlawful involuntary hold. This constitutes federal healthcare fraud punishable by up to 10 years federal imprisonment per count and subjects all responsible parties to maximum civil and criminal penalties.**

**Count Sixteen — Federal False Claims Act — 31 U.S.C. § 3729: Defendants Holyoke Hospital, Spuris Hatiras, and Dr. Lederman submitted false claims to Medicare — a federal healthcare program — based on forged documents for no legitimate services rendered, in violation of the Federal False Claims Act. Plaintiff is entitled to treble damages of 2,000.00 plus civil penalties of up to 7,018 per false claim submitted.**

**Count Seventeen — Forgery — M.G.L. c. 267; 18 U.S.C. § 1028: Defendants Holyoke Hospital, Dr. Lederman, Jane Doe Social Worker, and Holyoke Hospital Risk Management Department forged Plaintiff's signature on all hospital documents including the voluntary admission form, treatment plan, and discharge records. Plaintiff never signed any documents, repeatedly refused to sign, and formally withdrew her signature upon discovering the forgery. This conduct constitutes criminal forgery and subjects all responsible parties to civil and criminal liability.**

**Count Eighteen — Denial of Right to Counsel — Sixth Amendment; 42 U.S.C. § 1983: Throughout her two-week unlawful hold, Plaintiff repeatedly and exclusively demanded to speak with an attorney to work toward her release. This demand was systematically ignored and denied by Holyoke Hospital staff — violating Plaintiff's Sixth Amendment right to counsel and her civil rights under 42 U.S.C. § 1983.**

**Count Nineteen — Sexual Harassment and Hostile Environment: Plaintiff was subjected to sexual harassment by other patients during her two-week unlawful hold at Holyoke Hospital — in an environment of care for which Holyoke Hospital bears direct institutional responsibility for failing to protect Plaintiff from harassment during her unlawful detention.**

**Count Twenty — Defamation: Defendants Holyoke Hospital, Spuris Hatiras, and**

**Dr. Lederman falsified Plaintiff's medical records — including the voluntary admission form, treatment plan, and discharge records — in a manner that falsely represented Plaintiff's mental health status and damaged her reputation, constituting defamation and entitling Plaintiff to reputational damages.**

**Count Twenty-One — Intentional Infliction of Emotional Distress: The conduct of Holyoke Hospital Defendants — including false imprisonment for two weeks, forgery of Plaintiff's signature, denial of right to counsel, subjection to sexual harassment, and falsification of medical records — constitutes extreme and outrageous conduct causing Plaintiff severe emotional distress, entitling Plaintiff to maximum damages allowed under law.**

**Count Twenty-Two — Attempted Fraudulent Recharacterization: Defendants Holyoke Hospital and Holyoke Hospital Risk Management Department have attempted to reframe the intentional criminal conduct described herein as a negligence claim to be processed through the hospital's malpractice insurer — constituting a further act of fraud, obstruction, and consciousness of guilt. This conduct is itself actionable and will be referred to the Massachusetts Attorney General, the HHS Office of Inspector General, the FBI Healthcare Fraud Unit, the U.S. Attorney for the Southern District of New York, and the Centers for Medicare and Medicaid Services.**

Defendants Nicole Mazur, Plaintiff's Mother, Ian Gabbidon, Pat Hahn, Ivan Karamian, Berkshire Hathaway HomeServices, and Reynolds and Werman PC financially exploited Plaintiff's Mother, an elderly and vulnerable person, in violation of Massachusetts General Laws Chapter 265, Section 13K and applicable federal law.

**Count Eleven — Misuse of Charitable Funds**

Defendant Robert [Last Name Unknown] and Goldman Sachs Philanthropy Fund misused charitable funds to finance the fraudulent purchase of 158 Pleasant Street through Ian Gabbidon, in violation of federal tax law, IRS regulations governing donor-advised funds, and applicable securities regulations.

## VII. DAMAGES

Plaintiff has suffered the following damages as a direct and proximate result of Defendants' conduct described herein:

A. COMPENSATORY DAMAGES:

1. Loss of equitable ownership interest in 158 Pleasant Street, Holyoke, Massachusetts — assessed taxable value: $267,900.00

2. Down payment contribution — life savings: $10,000.00

3. Mortgage and tax contributions: $79,000.00

4. Personal property stored at 158 Pleasant Street — vehicle, jewelry, furniture, artwork, china, sterling silver, collectibles: $50,000.00 minimum

5. Fraudulently obtained sale proceeds retained by Nicole Mazur: $196,000.00

6. Fraudulent Medicare billing — Braven Health/Blue Cross Blue Shield of NJ: $14,000.00

7. Roman Levin's literary estate — Nobel Laureate correspondence, rare Dovlatov editions, antiques, manuscripts, publishing archives — value to be determined by expert appraisal — estimated minimum: $500,000.00

8. Emotional distress, humiliation, reputational harm, and psychological trauma from false arrest, two-week unlawful imprisonment, sexual harassment, denial of right to counsel, and forged medical records: $500,000.00 minimum

9. Lost income and opportunities during unlawful detention and litigation: $100,000.00 minimum

10. Attorneys' fees and costs: to be determined

TOTAL COMPENSATORY DAMAGES (MINIMUM): $1,716,900.00

B. TREBLE DAMAGES UNDER 18 U.S.C. § 1964(c) — RICO:

Under the Racketeer Influenced and Corrupt Organizations Act, Plaintiff is entitled to treble her compensatory damages:

$1,716,900.00 x 3 = $5,150,700.00

C. PUNITIVE DAMAGES:

Given the deliberate, premeditated, and egregious nature of Defendants' conduct —

including the taunting of a dying man, the forging of medical documents, the exploitation of an elderly widow, and the destruction of an irreplaceable cultural legacy — Plaintiff seeks punitive damages of not less than $10,000,000.00 against Nicole Mazur and $5,000,000.00 against Goldman Sachs & Co. LLC, Valley Health Systems Inc., Holyoke Hospital, and Braven Health.

D. FALSE CLAIMS ACT DAMAGES — 31 U.S.C. § 3729:

Treble damages on fraudulent Medicare billing: $14,000.00 x 3 = $42,000.00 plus civil penalties

E. CIVIL RIGHTS DAMAGES — 42 U.S.C. § 1983 AND § 1988:

Compensatory and punitive damages for false arrest, unlawful imprisonment, denial of right to counsel, and civil rights violations: $5,000,000.00 minimum

plus attorneys' fees under 42 U.S.C. § 1988

F. TOTAL DAMAGES SUMMARY:

| | |
|---|---|
| Compensatory Damages (minimum): | $1,716,900.00 |
| RICO Treble Damages: | $5,150,700.00 |
| Punitive Damages (minimum): | $15,000,000.00 |
| False Claims Act Treble Damages: | $42,000.00 |
| Civil Rights Damages: | $5,000,000.00 |
| Literary Estate Expert Appraisal: | TBD |
| Attorneys' Fees and Costs: | TBD |
| TOTAL MINIMUM DAMAGES: | $26,909,600.00 |

All damages are subject to increase upon expert appraisal of Roman Levin's literary estate — including his Nobel Laureate correspondence and rare Dovlatov editions — forensic accounting of all dissipated financial assets, and completion of discovery. Plaintiff expressly reserves the right to increase the damages demand upon identification of additional losses through discovery.

WITNESS — REGINALD BOUNDS: Plaintiff Jane Doe contacted Reginald Bounds and reported Nicole Mazur's fraudulent scheme to him directly. Reginald Bounds is a witness to Plaintiff's contemporaneous complaints about Nicole Mazur's conduct and can testify to the fact that Plaintiff reported the scheme before filing any legal action — demonstrating Plaintiff's good faith and the ongoing nature of Nicole Mazur's criminal enterprise. Plaintiff reported the following to Reginald Bounds: Nicole Mazur's orchestration of Plaintiff's false arrest, the fraudulent 100.00 deed transfer, the fraudulent straw sale to Ian Gabbidon for 196,000.00, and Nicole Mazur's concealment of Plaintiff's Mother's location. Reginald Bounds' contact information will be provided upon request and he is available to testify at trial.

RELEVANT FEDERAL CASE LAW

The following federal cases directly support Plaintiff's claims:

1. RICO — ESTATE FRAUD BY FAMILY MEMBER — SECOND CIRCUIT: D'Addario v. D'Addario, 2d Cir. — Plaintiff filed suit under RICO seeking to recover loss of inheritance from her mother's estate due to her brother's fraudulent schemes. The Second Circuit held that plaintiff adequately pleaded that defendants violated 18 U.S.C. § 1962(b) and (c) and that her legal expense injuries were proximately caused by defendants' RICO violations. This case is directly on point — like D'Addario, Plaintiff here seeks to recover her inheritance and equitable ownership interest in 158 Pleasant Street that was fraudulently stripped from her by her sibling Nicole Mazur through a coordinated scheme of fraudulent conveyances.

2. RICO — PATTERN OF RACKETEERING — ASSOCIATION IN FACT ENTERPRISE:
Turkette v. United States, 452 U.S. 576 (1981) — The Supreme Court held that RICO's definition of enterprise encompasses both legitimate and illegitimate enterprises. An

association-in-fact enterprise need not have a formal structure — it need only be a group of individuals associated for a common purpose. The enterprise described herein — Nicole Mazur, Robert, Goldman Sachs, Ian Gabbidon, Reynolds and Werman PC, and the real estate agents — constitutes exactly such an association-in-fact.

3. RICO — WIRE FRAUD PREDICATE ACTS: Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639 (2008) — The Supreme Court held that RICO plaintiffs need not show they relied on the fraudulent communications — only that the fraud proximately caused their injuries. Nicole Mazur's wire communications from Queens, New York proximately caused Plaintiff's false arrest, unlawful detention, and loss of her equitable ownership interest in 158 Pleasant Street.

4. FALSE ARREST — CIVIL RIGHTS — NO PROBABLE CAUSE: Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) — The Second Circuit held that a warrantless arrest without probable cause violates the Fourth Amendment and gives rise to a § 1983 claim. The red-haired Holyoke Police officer had no probable cause to arrest Plaintiff — he had been told by Plaintiff herself that this was a civil housing dispute, that she was a part owner of the property, and that she intended to file in Land Court. Despite this knowledge he arrested her based solely on an untested stain, without conducting any forensic verification.

5. MONELL — MUNICIPAL LIABILITY — SUPERVISORY RATIFICATION: Monell v. Department of Social Services, 436 U.S. 658 (1978) — The Supreme Court established municipal liability under § 1983 where a constitutional violation results from an official policy or custom. The Holyoke Police Department's institutional Facebook friendship with Nicole Mazur — combined with the Supervisor's receipt of Plaintiff's formal complaint and deliberate failure to act — constitutes the policy or custom of deliberate indifference required for Monell liability.

6. FALSE IMPRISONMENT — PSYCHIATRIC HOLD — DUE PROCESS: Youngberg v. Romeo, 457 U.S. 307 (1982) — The Supreme Court held that involuntary commitment implicates liberty interests protected by the Due Process Clause of the Fourteenth Amendment. Plaintiff's two-week involuntary detention at Holyoke Hospital — without a signed voluntary admission, without a court order, and without any evidentiary hearing after the statutory 72-hour period — violated her constitutionally protected liberty interests.

7. CONSTRUCTIVE TRUST — FRAUDULENT CONVEYANCE: Sharp v. Kosmalski, 40 N.Y.2d 119 (1976) — The New York Court of Appeals held that a constructive trust may be imposed where a transfer is obtained through fraud, undue

influence, or exploitation of a confidential relationship. Nicole Mazur's exploitation of Plaintiff's Mother's grief, cognitive decline, and vulnerability to obtain a 00.00 transfer of a 67,900.00 property squarely fits within the constructive trust doctrine — Nicole Mazur holds all proceeds as constructive trustee for Plaintiff's benefit.

8. PSEUDONYMOUS FILING — JANE DOE: Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185 (2d Cir. 2008) — The Second Circuit established a 10-factor balancing test for pseudonymous filing. Plaintiff's Motion to Proceed Under Pseudonym — filed simultaneously with this complaint — satisfies all applicable factors including risk of retaliation from defendants with significant resources, the sensitive nature of psychiatric detention allegations, and the pendency of related proceedings where Plaintiff's identity must be protected.

9. MEDICARE FRAUD — FALSE CLAIMS ACT: United States ex rel. Escobar v. Universal Health Services, 579 U.S. 176 (2016) — The Supreme Court held that implied false certification can be the basis for False Claims Act liability when a defendant submits a claim for payment while knowingly violating a material requirement. Holyoke Hospital's submission of 4,000.00 in Medicare claims based on forged documents — after being put on notice by Plaintiff that the documents were forged and no treatment was rendered — constitutes exactly the type of knowing false certification addressed in Escobar.

10. ELDER FINANCIAL EXPLOITATION — UNDUE INFLUENCE: In re Estate of Votteler, 12 N.Y.3d 207 — New York courts have consistently held that transfers obtained from elderly persons through undue influence are voidable. The combination of Plaintiff's Mother's cognitive decline, grief, isolation, and complete financial dependence on Nicole Mazur — combined with the grossly inadequate consideration of 100.00 for a 267,900.00 property — establishes undue influence as a matter of law.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court:

1. Enter judgment against all Defendants jointly and severally for all compensatory damages suffered by Plaintiff;
2. Award Plaintiff treble damages pursuant to 18 U.S.C. § 1964(c);
3. Award Plaintiff attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c);
4. Issue an immediate injunction freezing all assets of Nicole Mazur, including the $196,000.00 in fraudulently obtained sale proceeds;

5. Issue an immediate injunction requiring Ian Gabbidon to preserve all personal property, literary archives, Nobel Laureate correspondence, rare Dovlatov editions, and Plaintiff's personal property at 158 Pleasant Street, Holyoke, Massachusetts;

6. Order the disgorgement of all ill-gotten gains by all Defendants;

7. Order Nicole Mazur to immediately disclose the name and location of the nursing home where Plaintiff's Mother resides;

8. Order Goldman Sachs Philanthropy Fund to account for all funds disbursed in connection with the purchase of 158 Pleasant Street, Holyoke, Massachusetts;

9. Refer this matter to the United States Attorney for the Southern District of New York for criminal investigation and prosecution of all Defendants;

10. Refer Defendant Robert [Last Name Unknown] and Goldman Sachs Philanthropy Fund to the Securities and Exchange Commission, the Internal Revenue Service, and FINRA for investigation of potential securities violations, tax fraud, and misuse of charitable funds;

11. Refer Defendants Pat Hahn, Ivan Karamian, and Berkshire Hathaway HomeServices to the Massachusetts Board of Registration of Real Estate Brokers and Salespersons for investigation and disciplinary proceedings;

12. Refer Defendant Reynolds and Werman PC to the Massachusetts Board of Bar Overseers for investigation and disciplinary proceedings;

13. Award punitive damages against all Defendants;

14. Grant such other and further relief as this Court deems just, equitable, and proper.

## IX. JURY TRIAL DEMAND

Plaintiff Jane Doe hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## X. VERIFICATION

I, Jane Doe, Plaintiff herein, declare under the pains and penalties of perjury under the laws of the United States of America that the foregoing statements are true and accurate to the best of my personal knowledge, information, and belief.

Respectfully submitted,

Jane Doe 8-7-2026